UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SANTANDER CONSUMER USA, INC.,<br><br>      Plaintiff,<br><br>v.<br><br>THE CITY OF YONKERS, A.P.O.W.<br>TOWING, LLC AND HAROLD<br>WUESTENHOEFER,<br><br>      Defendants. | **CIVIL ACTION NO:**<br><br>    **COMPLAINT** |

Plaintiff Santander Consumer USA, Inc. ("Santander" or "Plaintiff") brings this Complaint against Defendants The City of Yonkers (hereinafter "Yonkers"), A.P.O.W. Towing, LLC. ("APOW") and Harold Wuestenhoefer ("Wuestenhoefer") (collectively, "Defendants"), and alleges as follows:

## INTRODUCTION

1.      Santander brings this action to stop the widespread and repeated deprivations of its property without regard to the well-settled and fundamental constitutional rights to be free from unreasonable seizures and to due process of law under the United States and New York Constitutions.   Specifically, Yonkers and APOW routinely work in tandem to seize motor vehicles—including one at issue here—as part of Yonkers' ill-advised and overly aggressive revenue-raising scheme relating to parking ticket enforcement.

2.      Yonkers and APOW leverage the hardship of seizure and subsequent threat of disposal of motor vehicles to force payment of unadjudicated parking tickets _and_ to force turn over of additional, un-owed monies and other things of value to Yonkers and APOW (including, but not limited to, releases of liability and towing and storage charges).

3.      Here, Yonkers and APOW seized and detained a vehicle in which Santander held a lien, then extended the length of deprivation—all while alleging storage charges continued to accrue—by insisting that a myriad of financial, legal and documentary conditions be satisfied before Santander could recover the vehicle.

4.      Yonkers and APOW seized the vehicle and demanded monies and other things of value in exchange for the vehicle's release (a) without a warrant or valid exception to the warrant requirement, _and_ (b) without affording Santander a hearing before an impartial decision-maker, with adequate notice, whereat Santander could protect its interests in the vehicle.

5.      As the decision maker and person in control of APOW, Harold Wuestenhoefer is liable to Santander for all actions of APOW and all damages charged to APOW.

6.      Defendants continue to hold the vehicle from Santander to this day, claiming their actions are protected by police authority and claiming they are owed a lien for towing and storage charges, accrued and continuing to accrue, purportedly having priority over Santander's rights, without valid basis for continued seizure or due process of law.

## JURISDICTION AND VENUE

7.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, as well as 28 U.S.C. § 2201, relating to Defendants' deprivation of Santander's rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

8.      Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), which provide for original jurisdiction in this Court for all suits brought pursuant to 42 U.S.C. § 1983, as well as 28 U.S.C. § 1331, which provides for original jurisdiction in this Court for all causes of action arising under the Constitution and laws of the United States.

9.     The supplemental jurisdiction of the District Court is invoked pursuant to 28 U.S.C. § 1367 for inter-related state law claims which arise from the occurrences giving rise to the Federal claims and which have a common nucleus of operative fact.

10.     Venue lies in the Court pursuant to 28 U.S.C. § 1391.

## PARTIES

11.     Santander Consumer USA, Inc. ("Santander") is a Delaware Corporation. Santander is the holder of the duly recorded and perfected security interest in the 2017 Nissan Pathfinder vehicle identification number 5N1DR2MM8HC689727 (the "Subject Vehicle"). Santander is in the regular business of financing vehicles and retaining first priority liens in those vehicles.

12.     Defendant The City of Yonkers (hereinafter "Yonkers") is a municipal corporation organized and existing under the laws of the State of New York.

13.     Defendant A.P.O.W. Towing, LLC ("APOW") is, upon information and belief, a business entity organized and existing under the laws of the State of New York and operating as a business engaged in the towing and storage of motor vehicles. APOW is, upon information and belief, physically in possession of the Subject Vehicle.

14.     Defendant Harold Wuestenhoefer is a citizen of the State of New York and the owner and person responsible for the practices and decisions made by APOW.

## FACTS COMMON TO ALL COUNTS

### Santander's Interest in the Subject Vehicle

15.     As of about August 1, 2018, Santander held the first priority duly perfected lien in the Subject Vehicle.

16.     Santander financed the purchase of the Subject Vehicle in the ordinary course of Santander's business by an individual named Kate A. Mensah, who registered the Subject Vehicle with The New York State Department of Motor Vehicles.

**Seizure of the Subject Vehicle**

17.     Yonkers and APOW seized the Subject Vehicle.

18.     Specifically, on or about January 24, 2020, Yonkers seized and took possession and custody of the Subject Vehicle, pursuant to Yonkers' police officers acting within their duties as law enforcement officers

19.     Upon information and belief, the reason for Yonkers' seizure of the Subject Vehicle related to unadjudicated parking violations allegedly due to the City of Yonkers.

20.     Yonkers engaged APOW to tow vehicles, and pursuant to that engagement, utilized APOW to tow and hold the Subject Vehicle.

21.     At the time of seizure by Yonkers and APOW, the Subject Vehicle was legally parked on a public highway.

22.     Santander has not been charged with any wrongdoing relating to the Subject Vehicle.

**Yonkers and APOW Impressed an *Ex Parte* Lien as of the Date of the Seizure**

23.     Neither Yonkers nor APOW arranged to notify Santander of the seizure of the Subject Vehicle, either before or after towing the Vehicle.

24.     On or about January 28, 2020,  Santander was informed by a vendor that monitors seized vehicles that the Subject Vehicle was being held by APOW.

25.     On January 29, 2020, a Santander representative contacted APOW to seek return of possession of the Subject Vehicle.

26.     On the telephone, that Santander representative spoke to an APOW representative named "Betty."   Betty stated that Santander could not redeem or recover the Subject Vehicle unless Santander first (i) obtained a police release from Yonkers, (ii) paid a $150.00 "tow fee," (iii) paid an $85.00 "tow prep" fee, (iv) paid a $100.00 "winch fee," and (v) paid a "storage fee" of $35.00 per day, the last of which accrued from the date of tow and continued to accrue daily.

**Yonkers and APOW Refused To Release The Vehicle**

27.     Santander contacted Yonkers to recover the Subject Vehicle and Yonkers stated that Santander could not recover the Subject Vehicle unless Santander:

   a.   Paid all towing and storage fees demanded by APOW;

   b.   Agreed not to permit the vehicle owner to redeem possession of the Subject Vehicle unless Yonkers received payment for all outstanding, unadjudicated parking tickets for the Subject Vehicle;

   c.   Provided a release of liability and hold harmless agreement to Yonkers and APOW; and

   d.   Provided four (4) types of documents demanded by Yonkers.

28.     On February 25, 2020, Yonkers confirmed the above described demands by three-page fax to Santander, a copy of which is attached hereto as **Exhibit 1**.

29.     Some of Yonkers' demands are nonsensical, and therefore are impossible to comply with.  For example, Yonkers demanded that the "lienholder must submit a readable copy of the lease," which (of course) does not exist for a vehicle that has not been leased.  For example, Yonkers demanded that the "Lienholder must submit a copy of the lien," which does not exist because a lien is a property right, not a document, and that property right is perfected by recordation on the vehicle title, a matter of public record available to Yonkers.

30.     Some of Yonkers' demands are impossible to comply with because they would require Santander to break the law and/or breach its contracts.  For example, Yonkers demanded

that Santander to agree not to return the vehicle to the owner, even though the owner has redemption rights under New York law and the parties' retail installment contract.

31.     In addition to Yonkers' demands, Santander would also have been required to satisfy APOW's demands to obtain possession of the subject vehicle.

32.     Santander was not required to comply with APOW's demands, which were not authorized by any law.

**Yonkers, APOW, and Wuestenhoefer's Deprivation of Santander's Right to be free from unreasonable seizure of the Subject Vehicle**

33.     The above-described conduct is consistent with Yonkers and Apow's regular policies, customs and/or practices relating to the seizure of motor vehicles relating the enforcement of unadjudicated parking tickets.

34.     Yonkers is a government actor, and APOW took these actions under color of law and/or in concert with Yonkers.

35.     Upon information and belief, Wuestenhoefer was and is the person responsible for creating and implementing APOW's regular practices, including the practice of impressing an ex parte lien for towing and storage on a seized vehicle, the practice of refusing to allow a lienholder to recover a vehicle without a release from Yonkers and the practice of not having any process for allowing a hearing relative to APOW's detention of the vehicle.

36.     Yonkers and APOW's conduct in (a) initially towing the vehicle, and (b) in retaining possession both meaningfully interfered with Santander's protectible property interests in the Subject Vehicle.

37.     Yonkers and APOW did not obtain a warrant nor have a valid exception to the warrant requirement, either before seizing the Subject Vehicle or while continuing to withhold possession of the vehicle from Santander.

38. Neither Yonkers nor APOW secured judicial review over (a) the initial seizure, or (b) the continued retention of the Subject Vehicle, either before or after seizing and detaining said vehicle.

39. By seizing the Subject Vehicle in the first place, *and* by continuing to withhold possession of the Subject Vehicle, unless Santander complied with Yonkers and APOW's demands, Yonkers and APOW deprived Santander of its right to be free from unreasonable seizures secured by  the Fourth Amendment to the United States Constitution and the New York State Constitution.

40. Yonkers and APOW tow and detain many vehicles every year without a warrant or valid exception to the warrant requirement, and therefore equally deprive numerous others of the same rights.

41. Because there is no judicial review of Yonkers and APOW's conduct, Yonkers and APOW ensure that there is an unreasonable seizure every time Yonkers and APOW tow and impress a lien on a subject vehicle, while continuing to detain it against the owner and/or lienholder.

42. The rights Yonkers and APOW violate are so well settled that Yonkers and APOW's actions amount to deliberate indifference by Harold Wuestenhoefer (the person who sets APOW's policies) to these well settled constitutional rights.

**Yonkers, APOW, and Wuestenhoefer's Deprivation of Santander's Property Rights in the Subject Vehicle Without Due Process of Law**

43. The above-described conduct is consistent with Yonkers and APOW's regular policies, customs and/or practices relating to the seizure of motor vehicles relating the enforcement of unadjudicated parking tickets.

44.     Yonkers and APOW failed to properly provide Santander with notice of (a) seizure of the Vehicle, (b) a procedures to recover possession of the Vehicle, and/or (c) procedures to challenge Yonkers' and/or APOW's conduct and the legitimacy of their demands.

45.     Yonkers and APOW do not have a procedure for providing persons who wish to challenge Yonkers and/or APOW's initial seizure and/or continued detention of a vehicle with an opportunity to be heard before a neutral decisionmaker.

46.     Yonkers and APOW, acting under color of law, impress *ex parte* possessory liens for charges against vehicles, including the Subject Vehicle, without first providing for a hearing before an impartial decision-maker, with adequate notice, whereat Santander or any other person could protect their interests in the vehicles and/or challenge the charges or imposition of the lien.

47.     Yonkers and APOW do not have a procedure for providing persons who wish to challenge the propriety of Yonkers and APOW's conditions for release of vehicle with an opportunity to be heard before a neutral decisionmaker.

48.     Yonkers and APOW's failure to have such procedures ensures that there is a denial of Due Process every time Yonkers and APOW tow a vehicle, impress a lien, and continue to withhold possession while demanding money and/or other things of value (*i.e.* a release) as a condition for release of a vehicle.

49.     Yonkers' and APOW's actions deprive Santander of its right to Due Process as secured by the United States Constitution, as well as the New York State Constitution.  Yonkers and APOW tow and detain many vehicles every year and equally deprive numerous others by similarly impressing liens on those others' vehicles without notice and a hearing, contrary to both the Federal and New York State constitutions.

50.     The rights Yonkers and APOW violate are so well settled, that Yonkers and APOW's actions amount to deliberate indifference by Harold Wuestenhoefer (the person who sets APOW's policies) to these well settled constitutional rights

51.     Yonkers and APOW continue to hold and detain the Subject Vehicle and continue to assert that they are entitled to a lien for towing and storage which has priority over Santander's rights.

## COUNT I
### Violation of Civil Rights Pursuant to title 42 U.S.C. §1983
### (Deprivation of Property Without Due Process of Law and Deprivation by Unreasonable Seizure in violation of the Fourteenth and Fourth Amendments to the United States Constitution)

52.     Santander realleges and incorporates herein by reference each of the foregoing allegations of the complaint.

53.     Prior to Yonkers' and APOW's involvement with the Subject Vehicle, Santander held the duly recorded first priority security interest and lien in the Subject Vehicle.

54.     At all times relevant to this action, Santander had the immediate right to take possession of the Subject Vehicle pursuant to the terms of Santander's security agreement.

55.     Yonkers and APOW acted under color of state law to deprive Santander of its property interests in the Subject Vehicle by seizing and detaining the Subject Vehicle without providing any form of notice or hearing whereat Santander could protect its interests.

56.     Yonkers and APOW acted under color of state law to deprive Santander of its property interests in the Subject Vehicle by impressing a lien for towing and storage fees against the Subject Vehicle without having provided notice—prior to claiming to attach the lien—to Santander that Yonkers and APOW intended to impress a lien that would supposedly supersede Santander's interests.

57.     Yonkers and APOW also acted under color of state law to deprive Santander of its property interests in the Subject Vehicle by impressing a lien for towing and storage fees against the Subject Vehicle without having provided a hearing whereat Santander could protect its interests from such supposed lien.

58.     The initial seizure of the Subject Vehicle by Yonkers and APOW and the subsequent seizure which occurred once the subject vehicle was detained at the APOW premises was wrongful and violated the Fourth Amendment prohibition against unreasonable seizures because Yonkers and APOW had no warrant and no exception to the warrant requirement existed.

59.     The initial seizure of the Subject Vehicle by Yonkers and APOW was wrongful and violated the Fourteenth Amendment guaranty of Due Process because Yonkers and APOW afforded no opportunity for a pre-seizure hearing with adequate notice and there were no exigent circumstances justifying pre-hearing seizure.

60.     The detention of the Subject Vehicle was wrongful and violated the Fourteenth Amendment guaranty of Due Process because Yonkers and APOW, working in concert, imposed a series of unjustifiable conditions to release designed to financially benefit both Yonkers and APOW without having any procedure for affording the opportunity to contest the detention with adequate notice to all parties with interests in the vehicle. The conditions impressed by Yonkers were:

      a.  Yonkers would not permit the vehicle to be released until all fees demanded by APOW were paid;

      b.  Yonkers demanded that SANTANDER must promise to refuse to allow the vehicle owner to recover the vehicle unless all parking tickets are paid;

      c.  Yonkers demanded that SANTANDER release Yonkers and APOW from all liability for the seizure, detention, and control of the Subject Vehicle;

    d.    Yonkers demanded that SANTANDER present various documents and stated that for every day the documents were not presented, APOW's fees would increase by $35.00 per day; and

    e.    Yonkers threatened to sell the vehicle if its demands were not met.

61.    The conditions imposed by APOW were:

    a.    Santander secure Yonkers' permission for APOW to release the Subject Vehicle;

    b.    Santander pay a $150.00 "tow fee;"

    c.    Santander pay an $85.00 "tow prep" fee;

    d.    Santander pay a $100.00 "winch fee;"

    e.    Santander pay a "storage fee" of $35.00 per day, starting as of the tow date.

62.    The impressment of a lien against the Subject Vehicle by Yonkers and APOW was wrongful and violated the Fourteenth Amendment guaranty of Due Process because Yonkers and APOW, acting in concert, and for their mutual benefit and enrichment created all of the circumstances underlying the purported lien for towing and storage charges, without having any procedure for affording the opportunity for a hearing to contest such liens, with adequate notice.

63.    APOW's action in using the authority delegated by Yonkers to tow the Subject Vehicle, and then using such authority and state law to deprive Santander of its property rights in the Subject Vehicle without pre-deprivation notice and the opportunity for a hearing, violates the Due Process guaranty of the Fourteenth Amendment to the United States Constitution.

64.    APOW and Harold Wuestenhoefer knew or should have known that it was unconstitutional to create a towing and storage lien for the period of time that the Yonkers was detaining the vehicle where notice and a hearing upon the validity of such lien had not been afforded to the persons with property interests in the Subject Vehicle, including Santander.

65.     Yonkers' and APOW's action in using the police power to detain the Subject Vehicle without cause, after any law enforcement purpose for the initial seizure ended, violates the Fourth Amendment to the United States Constitution.

66.     Yonkers, APOW and Harold Wuestenhoefer knew or should have known that it was unlawful and unconstitutional to detain a vehicle without a warrant or exception to the warrant requirement after the law enforcement justification for the initial seizure ended.

67.     As a direct and proximate result of Yonkers' and APOW's violation of Santander's right to be free from unreasonable seizures under the Fourth Amendment to the United States Constitution and its right to Due Process under the Fourteenth Amendment to the United States Constitution, Santander has suffered damage based upon the lost value of the Subject Vehicle.

68.     From the time of Yonkers' and APOW's impound of the Subject Vehicle, the vehicle has depreciated in value to the direct damage of Santander.

69.     Yonkers' and APOW's refusal to release the Subject Vehicle deprived Santander of the use of the Subject Vehicle and has interrupted the stream of payments due to Santander on its security agreement covering of the Subject Vehicle, to the direct damage of Santander.

70.     The conduct of Yonkers and APOW as described herein was consistent with and part of the standard procedure and policy utilized by Yonkers and APOW.

71.     The terms and conditions needed for release of the Subject Vehicle set forth in Exhibit 1 hereto were consistent with and part of the standard procedure and policy utilized by Yonkers and APOW.

72.     The conduct of Yonkers and APOW in charging towing and storage fees as a lien on the Subject Vehicle beginning with the first day of seizure and continuing every day thereafter

that Yonkers and APOW possesses the Subject Vehicle is consistent with and part of the standard procedure and policy utilized by Yonkers and APOW.

73.    The conduct of Yonkers in threatening to sell the Subject Vehicle within fifteen days from the tow date is consistent with and part of the standard procedure and policy utilized by Yonkers and APOW.

74.    The conduct of Yonkers and APOW in refusing to release the Subject Vehicle to Santander unless Santander paid towing, "prep," "winch," and storage fees to Yonkers and APOW assessed without any opportunity for a hearing is consistent with and part of the standard procedure and policy utilized by Yonkers and APOW.

75.    It is Yonkers' and APOW's regular policy to refuse a lienholder's request to recover possession of a vehicle siezed by Yonkers and APOW unless the lienholder first presents a document to APOW which indicates that Yonkers has released the vehicle.

76.    The official decisions attributable to APOW were vested in a designated officer of APOW—namely, Harold Wuestenhoefer —with actual and apparent exclusive authority over the Subject Vehicle which decisions to act or not act directly caused the deprivations complained of by Santander.

77.    The Yonkers and APOW practices in seizing, detaining, charging towing and storage fees at a daily rate and holding out such charges as a de facto lien giving Yonkers and APOW the priority right of possession are persistent, regular and widespread thereby constituting custom and usage.

78.    The failure by official APOW and Harold Wuestenhoefer to properly train or supervise subordinates regarding the process due in conjunction with the seizure, detention and assertion of charges and liens against vehicles—as made clear by numerous controlling court decisions amounts to deliberate indifference to the rights of persons who have interests in

vehicles that are seized, detained, subjected to charges and liened by Yonkers and APOW, including:

    a.   Ally Financial v. All County Towing, 162 AD3d 1371 (3rd Dept. 2018);

    b.   HVT v. All County Towing & Recovery, 166 AD3d 14421(3rd Dept. 2018);

    c.   Ally Financial v. All County Towing & Recovery, 166 AD3d 1142 (3rd Dept. 2018);

    d.   Santander Consumer USA, Inc. v. All County Towing, 171 AD3d 1258 (3rd Dept. 2019);

    e.   Vault Trust v. All County Towing & Recovery, 171 AD3d 1336 (3rd Dept. 2019);  and

    f.   Ally Financial v. All County Towing, 174 AD3d 1071 (3rd Dept. 2019).

79.    But for Yonkers and APOW's deprivational policy, decisions, practices and failures, Santander would have had the right to recover and would have recovered the Subject Vehicle without delay or with minimal delay by reason of measures that preserve legitimate state interests but are less intrusive than continued detention of the vehicle, without incurring liability for or loss due to towing and storage charges impressed ex parte; and without incurring liability for or loss due to further storage charges continually accruing daily and without loss of lien priority to the claim asserted by Yonkers and APOW against the Subject Vehicle.

### COUNT II
**Violation of New York Constitution Article I, Sec. 6**
**(Deprivation of Property Without Due Process of Law) Article I, Sec. 12**
**(Deprivation by Unreasonable Seizure)**

80.    Santander realleges and incorporates herein by reference each of the allegations set forth in the foregoing paragraphs of the complaint.

81.    Yonkers, APOW and Harold Wuestenhoefer's actions also violate the corresponding protection of the New York State Constitution set forth in Article I, Sections 6 and 12 therein.

## COUNT III
### Declaratory Relief

82.     Santander realleges and incorporates herein by reference each of the allegations set forth in the foregoing paragraphs of the complaint.

83.     An actual controversy has arisen and now exists between Santander, Yonkers, APOW and Harold Wuestenhoefer warranting declaratory relief pursuant to 28 U.S.C. 2201.

84.     Santander seeks a declaration that Yonkers, APOW and Harold Wuestenhoefer must release the Subject Vehicle to Santander and that all monetary charges asserted against the Subject Vehicle are null and void against Santander.

85.     Santander seeks a declaration that Due Process violations occurring by reason of Yonkers and APOW's improper detention of the Subject Vehicle are chargeable to Yonkers, APOW and Harold Wuestenhoefer, jointly and severally.

86.     Santander seeks a declaration that the conduct of Yonkers, APOW and Harold Wuestenhoefer, as detailed above, violates the United States and New York State Constitutions.

87.     Santander seeks a declaration that, to the extent relied on by Yonkers and APOW to justify its actions, New York State Law is unconstitutional (as applied) as a violation of due process and the right to be free from unreasonable seizures under the United States and New York State constitutions.

88.     Santander seeks a declaration that Yonkers, APOW and Harold Wuestenhoefer are liable to Santander pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for all damages and attorney's fees suffered and incurred by Santander.

## COUNT IV
### Replevin

89.     Santander realleges and incorporates herein by reference each of the allegations set forth in the foregoing paragraphs of the complaint.

90.     Santander's security agreement for the Subject Vehicle is in default for non-payment and by reason of the seizure and detention of the Subject Vehicle caused by Yonkers and APOW.

91.     Such default entitles Santander to take possession of the Subject Vehicle.

92.     Santander has made demand upon Yonkers and APOW that the Subject Vehicle be released to Santander but Yonkers and APOW have failed and refused to permit Santander to enter APOW's premises for purposes of Santander taking possession of the Subject Vehicle.

93.     Yonkers and APOW have no lawful basis to detain the Subject Vehicle from Santander.

94.     Santander demands a judgment for possession of the Subject Vehicle.

### COUNT V
### CONVERSION

95.     Santander realleges and incorporates herein by reference each of the allegations set forth in the foregoing paragraphs of the complaint.

96.     APOW and Wuestenhoefer exercised wrongful dominion and control over the Subject Vehicle by refusing to release it to Santander.

97.     Wuestenhoefer is directly controlling the actions of APOW in converting the Subject Vehicle.

98.     Santander has suffered damages for lost value, loss of use, depreciation and other actual damages as a result of APOW and Wuestenhoefer's conduct.

99.     The actions of APOW and Wuestenhoefer in refusing to release the Subject Vehicle unless Santander complied with Yonkers' demands required Santander to litigate this issue with Yonkers thereby entitle Santander to recover its attorneys' fees as consequential damages of APOW and Wuestenhoefer's actions.

100.     APOW and Wuestenhoefer's actions warrant punitive damages because such conduct continued despite direct state court authorities condemning such conduct.

### COUNT VI
### NEW YORK STATE GENERAL OBLIGATIONS LAW (GBL) 349

101.     Santander realleges and incorporates herein by reference each of the allegations set forth in the foregoing paragraphs of the complaint.

102.     APOW's statement that the Subject Vehicle may not be released without a police release, a hold harmless agreement and payment of fees which are not authorized by law constitute deceptive acts under well settled New York Law as detailed in paragraph 56 herein.

103.     APOW's regular policy to demand police release and hold harmless agreements and payment of such fees without legal basis pursuant to vehicle bailments in the many seized vehicles annually which originated by reason of APOW's joint enterprise with Yonkers, constitutes a practice having a broad impact upon consumers.

104.     APOW's actions complained of hereto are part of a regular and systematic practice controlled by Harold Wuestenhoefer, the principal operator of APOW.

105.     APOW and Harold Wuestenhoefer's actions constitute a deceptive act or practice in the conduct of any business, trade or commerce or in the furnishing of any service in violation of NYS GBL§ 349.

106.     APOW and Harold Wuestenhoefer have caused Santander damages by way of depreciation of the value of the Subject Vehicle, lost stream of payments from the Subject Vehicle, and loss of use of the Subject Vehicle, all while the Subject Vehicle was detained from Santander, as well as attorney fees as called for by law.

107.     APOW and Harold Wuestenhoefer's actions warrant punitive damages as such conduct continues despite numerous State Court decisions that directly condemn such conduct.

## PRAYERS FOR RELIEF

WHEREFORE, Santander requests that this Court grant:

a.  A judgment in favor of Santander and against Yonkers, APOW and Harold Wuestenhoefer on all causes of action asserted herein;

b.  A declaration that as a result of Yonkers and APOW's violation of Santander's rights, Yonkers and APOW have no right to detain the Subject Vehicle from Santander and are required to immediately release the vehicle upon demand to Santander;

c.  A declaration that as a result of Yonkers and APOW's violation of Santander's rights, Santander does not owe any of the monetary charges asserted by Yonkers and APOW against the Subject Vehicle, which do not take precedence over Santander's rights in the vehicle;

d.  A declaration that New York State Vehicle and Traffic Law § 1224 and Lien Law § 184 are unconstitutional as a violation of due process and the prohibition against unreasonable seizures under the United States and New York State Constitutions to the extent that any such statute is relied upon by Yonkers and APOW to justify the actions that form the basis of this complaint;

e.  An order directing Yonkers and APOW to deliver the Subject Vehicle to Santander forthwith;

f.  A permanent injunction against Yonkers, APOW and Harold Wuestenhoefer prohibiting the above-described unconstitutional and deceptive practices;

g.  An award of compensatory damages, consequential damages, punitive damages, statutory treble damages, costs and attorneys' fees against Yonkers, APOW and Harold Wuestenhoefer, jointly and severally, and in favor of Santander;

h.  An award of such other and different relief that the Court, in the exercise of its discretion, deems just and proper.

Dated: New York, New York
       June 15, 2020

                              **Norris McLaughlin, P.A.**

                              By:   _/s/ Nicholas Duston_____
                                    Nicholas A. Duston
                                    7 Times Square, 21st Floor
                                    New York, NY 10036
                                    212-808-0700
                                    naduston@norris-law.com
                                    *Counsel for Plaintiff*

# EXHIBIT 1

(214) 540 - 5554



# CITY OF YONKERS
## PARKING VIOLATIONS BUREAU
## 87 NEPPERHAN AVENUE
## YONKERS, NY 10701-3819
*Phone: 914-377-6627*
*Fax: 914-377-6607*

# FAX

*To:* PEGGY @ SANTANDER       *From:* DAN @ COYPVB

*Date:* 2/25/20               *Pages including cover:* 3

*Re:* REF #21571825       PLATE #HXD5400

*Comments:* <u>*Repo Requirements and Sample Letter Attached*</u>

*Please fax all documents to Isabelle, Boot and Tow Clerk, for review and approval.*

*After documents are approved, have Repo Agent present original notarized documents to the PVB to obtain release.*

*Releases are processed Monday thru Friday between 8:30 A. M. and 3:15 P. M. at the Boot and Tow window at the above address.*

*Any questions call 914-377-6627. Thank you.*

VEHICLE IS @ A.P.O.W. TOWING PLEASE CONTACT FOR FEES  914-423-5715

# CITY OF YONKERS PARKING VIOLATIONS BUREAU
## REPOSSESSION OF VEHICLE
## LIENHOLDER REQUIREMENTS

1. Lienholder (if owner) must pay any summonses owed in the company's name. The authorized agent must pay any summonses owed in his personal name.

2. The lienholder must pay the towing and storage fees to the tow company.

3. Lienholder must submit a default letter. No vehicle may be released unless the registered owner is in default. The letter should be accompanied by proof of the default; for example, an arrears letter to the owner.

4. Lienholder must submit a readable copy of the lease or contract.

5. Lienholder must submit a copy of the lien.

6. A hold harmless agreement must be submitted.

7. A letter of apparent authority must be submitted. This is a letter authorizing the agent who appears to receive possession of the vehicle. The agent must submit identification in the form of a driver's license or employment id. The name on the id must match the name of the authorized agent whose name is in the letter. A copy of the id should be attached to the file.

8. A letter agreeing not to turn the vehicle over to the owner until all judgments/obligations have been satisfied at the Parking Violations Bureau.

All letters should be notarized. All contracts, liens, leases, etc. should have a *notarized statement* on each page attesting to the fact that they are true copies of records held in their offices. "CERTIFIED COPY OF ORIGINAL DOCUMENT" or similar notarized statement is acceptable.

Please fax all documents to PVB for approval prior to sending your repo agent. The fax number is 1-914-377-6607.

Revised: 08/22/12

# [A. SAMPLE A]

Lienholder Name        XYZ Corporation
Lienholder Address     Any Town
                       Any State
Date                   Today


City of Yonkers
Parking Violations Bureau
87 Nepperhan Ave.
Yonkers, NY 10701-3819

Attn:   Name of Boot and Tow Clerk

RE:     Name of Person in Default-Registrant – John Doe
        State   NY    Plate   ZYX321
        Vin     12345678910111213141516117
        Year    2005  Make   Chev   Model   Impala   Body   4ds   Color   Red


To Whom It May Concern:


Name of Person in Default-Registrant – John Doe is in default of a contractual agreement dated Date. The default is due to Reason for Default – Seizure and Impound of Vehicle for Unpaid Parking Tickets and Judgments.

Lienholder Name- XYZ Corporation agrees to indemnify and hold the City of Yonkers, Parking Violations Bureau harmless for any liability or claim arising out of the release and return of the above referenced vehicle.

Lienholder Name- XYZ Corporation authorizes the City of Yonkers Parking Violations Bureau to release the above identified vehicle to Name of Authorized Agent - John Doe Repo who is an authorized agent of Repo Company Inc..

Lienholder Name- XYZ Corporation will not release this vehicle to the registrant/ titleholder without the consent of the City of Yonkers, Parking Violations Bureau and all outstanding parking tickets and fees are paid in full to the City of Yonkers, Parking Violations Bureau.

I hereby state that I am a duly authorized representative of Lienholder Name- XYZ Corporation. I have the express authority to act on its behalf, to make claim and representation of the facts herein and to bind the Lienholder Name- XYZ Corporation to those statements.


Signature


Name
Title

Lienholder Address
Phone Number

Notary Statement and Seal

Revised: 05/20/10