UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SANTANDER CONSUMER USA, INC.,

                            Plaintiff,

        v.

THE CITY OF YONKERS *et al.*,

                            Defendants.

---

No. 20-CV-4553 (KMK)

OPINION & ORDER

Appearances:

Sarah Bouskila, Esq.
Stroock & Stroock & Lavan LLP
New York, NY
*Counsel for Plaintiff*

Nicholas Andrew Duston, Esq.
Norris McLaughlin, PA
*Counsel for Plaintiff*

Andrew J. Campanelli, Esq.
Campanelli & Associates P.C.
*Counsel for Intervenor Plaintiff*

Dennis E. A. Lynch, Esq.
Blanchard & Wilson, LLP
White Plains, NY
*Counsel for Defendant The City of Yonkers*

Paul William Meyer, Esq.
Law Office of Paul W. Meyer, Jr.
Yonkers, NY
*Counsel for Defendants A.P.O.W. Towing LLC and Harold Wuestenhoefer*

KENNETH M. KARAS, District Judge:

Plaintiff Santander Consumer USA, Inc. ("Santander" or "Plaintiff") and Intervenor Plaintiff Kate A. Mensah ("Mensah" or "Intervenor") bring this Action under 42 U.S.C. § 1983 against Defendants The City of Yonkers (hereinafter "Yonkers"), A.P.O.W. Towing, LLC. ("APOW") and Harold Wuestenhoefer ("Wuestenhoefer"; together with APOW, the "APOW Defendants"; and collectively, "Defendants"), alleging constitutional and state law violations in connection with the seizure of Plaintiff and Intervenor's car.  (*See generally* Compl. (Dkt. No. 1).)  Before the Court are: (1) Santander's Motion for Attorney's Fees, 2) Yonkers' Motion for Summary Judgment, and 3) APOW's Motion for Summary Judgment, and 4) Mensah's Motion for Partial Summary Judgment.  (*See* Dkt. Nos. 89, 95, 103, 106.)  For the reasons discussed below, the Motion for Attorney's Fees is granted with modifications, Yonkers' Motion for Summary Judgment is denied, APOW's Motion for Summary Judgment is denied in part and granted in part, and Mensah's Motion for Summary Judgment is granted.

## I.  Background

### A.  Factual Background

The following facts are taken from Mensah's Statement Pursuant to Local Rule 56.1 (Mensah's Rule 56.1 Statement in Supp. of Mot. for Summ. J. ("Mensah's 56.1") (Dkt. No. 92)), Yonkers' Statement Pursuant to Local Rule 56.1 (Yonkers' Rule 56.1 Statement in Supp. of Mot. for Summ. J ("Yonkers' 56.1") (Dkt. No. 100)), the APOW Defendants' Statement Pursuant to Local Rule 56.1 (APOW's Rule 56.1 Statement in Supp. of Mot. for Summ. J. ("APOW's 56.1") (Dkt. No. 105)), the APOW Defs.' Counter Statement Pursuant to Local Rule 56.1 (APOW's Rule 56.1 Counter Statement in Supp. of Mot. for Summ. J. ("APOW's Counter 56.1") (Dkt. No. 118)), Mensah's Counter Statement Pursuant to Local Rule 56.1 (Mensah's Rule 56.1 Counter

Statement in Supp. of Mot. for Summ. J. ("Mensah's Counter 56.1 - APOW") (Dkt. No. 123)),

Mensah's Counter Statement Pursuant to Local Rule 56.1 (Mensah's Rule 56.1 Counter

Statement in Supp. of Mot. for Summ. J. ("Mensah's Counter 56.1 - Yonkers") (Dkt. No. 125)),

Yonkers' Counter Statement Pursuant to Local Rule 56.1 (Yonkers' Rule 56.1 Counter

Statement in Supp. of Mot. for Summ. J. ("Yonkers' Counter 56.1") (Dkt. No. 129)), and the

admissible evidence submitted by the Parties.

On July 16, 2018, Mensah entered into a financing agreement with Santander, whereby

Santander financed the purchase of a 2017 Nissan Pathfinder (the "Vehicle").  (Mensah's 56.1 ¶

50; APOW's 56.1 ¶ 1.)  Under the terms of the financing agreement, Mensah agreed to pay

Santander in monthly installments of $655 over a six-year period.  (APOW's 56.1 ¶ 1.)

Santander held title to the Vehicle and the first duly perfected lien in the Vehicle, and Mensah

had sole, undisputed right of continued use and possession of the Vehicle.  (Mensah's 56.1 ¶¶ 51,

53.)  Mensah registered the Vehicle with the New York State Department of Motor Vehicles.

(*Id*. ¶ 52.)  At the time that Mensah entered into the financing agreement, she resided at 180

Hawthorne Avenue, Apartment 2A, Yonkers, New York.  (APOW's 56.1 ¶ 2.)  However, the

Vehicle was registered to Mensah at 180 Hawthorne Avenue, Apartment 4E, Yonkers, New

York, where Mensah had previously resided.  (APOW's 56.1 ¶¶ 2–7.)  Mensah continued to

receive mail addressed to Apartment 4E.  (APOW's 56.1 ¶ 2.)

APOW was a contract vendor with Yonkers, pursuant to which APOW towed, stored,

and disposed of motor vehicles at the request of Yonkers.  (APOW's 56.1 ¶ 10; Mensah's 56.1 ¶

24.)  According to its contract, APOW could not release a vehicle to its owner until Yonkers

issued a release indicating that payment—i.e., for unpaid tickets, as well as the cost of towing

and storing the car—was made. (APOW's 56.1 ¶ 10; *see also* Mensah's 56.1 ¶ 30.) APOW must store vehicles for at least 60 days before disposal. (APOW's 56.1 ¶ 11.)

On January 24, 2020, APOW towed and impounded the Vehicle, which was parked on the street outside Mensah's apartment, at Yonkers' request. (APOW's 56.1 ¶ 8.) According to Defendants, the Vehicle was towed because it had an expired registration and because it had outstanding parking violations. (Yonkers' 56.1 ¶¶ 2–7; APOW's 56.1 ¶¶ 8–9; Mensah's 56.1 ¶ 62.) According to Mensah, she received no written notice regarding the seizure of the Vehicle. (Mensah's 56.1 ¶ 62.)

After the Vehicle was impounded, Mensah went to the Yonkers Parking Violations Bureau ("PVB") and requested a hearing before an independent Administrative Law Judge ("ALJ"). (Yonkers' 56.1 ¶ 8.) That hearing was held on January 27, 2020 in front of ALJ Joseph Ruggiero. (Mensah's 56.1 ¶ 65.) At the hearing, the ALJ found in favor of Mensah on some of the unpaid parking tickets but found against her on others. (*Id.* ¶ 66.) ALJ Ruggiero found that Mensah owed a balance of $1367.63 to Yonkers. (*Id.* ¶ 67; Yonkers' 56.1 ¶ 10.) When Mensah informed the ALJ that she could not pay the entire balance at once, ALJ Ruggiero permitted Mensah to pay in installments. (Yonkers' 56.1 ¶ 11.)

By March 20, 2020, Mensah paid the full balance to Yonkers. (*Id.* ¶ 12.) When she had made her final payment, Yonkers provided Mensah with a release so that she could obtain the Vehicle from APOW. (*Id.* ¶ 13.) According to Yonkers and APOW, Mensah signed an acknowledgement from the PVB stating that until she re-registered the Vehicle with the Department of Motor Vehicles, the Vehicle could not be operated on any public street. (*Id.*; APOW 56.1 ¶ 22.) Mensah denies that she signed such a statement. (APOW 56.1 ¶ 23.)

4

Before the Vehicle was towed, Mensah had defaulted on her loan payments to Santander. (APOW 56.1 ¶ 13; Yonkers 56.1 ¶ 43.)  Because of this, when Mensah went to APOW on March 20, 2020 to retrieve the vehicle, she was told that Santander had taken the car.  (APOW's 56.1 ¶ 26(b).)  Santander repossessed the Vehicle—which was still being held by APOW—on October 23, 2020.  (Mensah's 56.1 ¶ 98; *see also* Yonkers' 56.1 ¶ 16.)[1]  On November 25, 2020, Santander sold the Vehicle for $15,800.  (Mensah's 56.1 ¶ 100.)

Mensah alleges that she was deprived of the Vehicle from January 24, 2020 through October 23, 2020, during which time she and her children were "forced to use public transportation during a global pandemic." (*Id.* ¶ 99.)

B.  Procedural History

Santander filed its Complaint on June 15, 2020, alleging both constitutional and state law violations in connection with Defendants' seizure of the Vehicle. (Dkt. No. 1.)  Yonkers filed an Answer on July 7, 2020.  (Dkt. No. 12.)  The APOW Defendants filed an Answer and Cross-Claim against Yonkers on July 9, 2020.  (Dkt. No. 17.)  Yonkers filed an Amended Answer on July 17, 2020.  (Dkt. No. 19.)  The Court adopted a Case Management Order on October 6, 2020. (Dkt. No. 25.)  On October 15, 2020, the case was referred to Magistrate Judge Paul E. Davison ("Magistrate Judge Davison").  (Dkt. No. 26.)

On April 19, 2021, Mensah filed a Motion to Intervene, (Dkt. No. 53), which Magistrate Judge Davison granted on May 17, 2021, (Dkt. No. 61.)  On May 18, 2021, Mensah filed an Intervenor Complaint against Yonkers and APOW.  (Dkt. No. 62.)  On May 25, 2021, the APOW Defendants filed an Answer and Cross-Claim against Yonkers.  (Dkt. No. 63.)  Yonkers

_____

[1] APOW was allegedly exercising a statutory lien on the Vehicle.  (Yonkers' 56.1 ¶ 16.)

filed an Answer to the Intervenor Complaint on May 27, 2021, and it filed an Answer to the Cross-Claim on May 30, 2021.  (Dkt. Nos. 64–65.)

On August 3, 2021, Yonkers filed a Notice of an Offer of Judgment Pursuant to Federal Rule of Civil Procedure 68 ("Rule 68 Offer").  (Dkt. No. 72.)  On August 16, 2021, Yonkers and Santander filed a Notice of Acceptance indicating that Santander had accepted Yonkers' Rule 68 Offer.  (Dkt. No. 77.)  On August 17, 2021, the Court entered Judgement against Yonkers as to Santander's claims in the amount of $3,000.  (Dkt. No. 79.)  The Judgment also required Yonkers to further revise its Code at Chapter 109-132 "to provide for prompt notice of towing or removal as well as an opportunity to be heard before a person or party independent of [Yonkers] to any registered owner, title owner, lessor or lien holder of any motor vehicle being towed or removed for non- payment of parking tickets or other violations of law or Code."  (*Id.* )

Yonkers filed its Motion for Summary Judgment on September 10, 2021.  (Dkt. No. 89.) Mensah also filed her Motion for Summary Judgment on September 10, 2021.  (Dkt. No. 91.) Mensah filed her accompanying papers on September 22, 2021, (Dkt. Nos. 92–94), and Yonkers filed its accompanying papers on September 24, 2021.  (Dkt. Nos. 100–102.)[2]  On September 25, 2021, the APOW Defendants filed their Motion for Summary Judgment and accompanying papers.  (Dkt. Nos. 103–105.)  On October 22, 2021, the APOW Defendants filed their Opposition and accompanying papers.  (Dkt. Nos. 116–118.)  On the same day, Yonkers filed their Opposition and accompanying papers.  (Dkt. Nos. 119–120.)  Also on October 22, 2021, Mensah filed Oppositions to Yonkers' and the APOW Defendants' Motions for Summary

---

[2] Yonkers also appears to have filed a duplicate of both its Motion for Summary Judgment and some of its accompanying papers on September 29, 2021.  (Dkt. Nos. 106–107.)

Judgment.  (Dkt. Nos. 121–126.)  On November 12, 2021, Yonkers, Mensah, and the APOW

Defendants filed their Replies.  (Dkt. Nos. 129–135.)

Meanwhile, on September 23, 2021, Santander filed its Motion for Attorney's Fees and

accompanying papers.  (Dkt. Nos. 95–98.)  On October 8, 2021, and October 10, 2021, the

APOW Defendants filed their Opposition.  (Dkt. No. 110.)  Yonkers filed its Opposition on

October 10, 2021.  (Dkt. Nos. 111–113.)  Santander filed its Reply on October 22, 2021.  (Dkt.

Nos. 127–128.)

On December 9, 2021, the APOW Defendants and Santander filed a Stipulation of

Dismissal, in which all claims between Santander and the APOW Defendants were dismissed

with prejudice and without costs.  (Dkt. No. 136.)  The Court signed the Stipulation on

December 17, 2021.  (Dkt. No. 137.)

## II.  Discussion

### A.  Motion for Attorney's Fees

Under 42 U.S.C. § 1988, a district court is authorized to award the prevailing party in a

civil rights lawsuit reasonable attorney's fees.  *See Lilly v. City of New York*, 934 F.3d 222, 227

(2d Cir. 2019).  "Pursuant to the Rule 68 Offer of Judgment, [Santander] qualifies as the

prevailing party in this § 1983 action."  *Field v. Metro. Transp. Auth*., No. 20-CV-928, 2021 WL

22817, at *1 (S.D.N.Y. Jan. 4, 2021); *see also Lilly*, 934 F.3d at 227, 238 (affirming district

court's award of attorney's fees to party who accepted Rule 68 offer); *Smith v. City of New York*,

No. 19-CV-6198, 2022 WL 939711, at *3 (E.D.N.Y. Mar. 28, 2022) (finding the plaintiff to be

the prevailing party where he accepted a Rule 68 offer); *Robles v. City of New York*, No. 19-CV-

6581, 2021 WL 1034773, at *4 (S.D.N.Y. Feb. 26, 2021) (same), *report and recommendation

adopted*, 2021 WL 1177462 (S.D.N.Y. Mar. 29, 2021).

"Both [the Second Circuit] and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a presumptively reasonable fee." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quotation marks omitted). "After this calculation is performed, a district court may, in extraordinary circumstances, adjust the presumptively reasonable fee, but only when it does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Robles*, 2021 WL 1034773, at *4 (quotation marks omitted); *see also Smith*, 2022 WL 939711, at *3 (same). "The party seeking reimbursement of attorney's fees bears the burden of proving the reasonableness and the necessity of the hours spent and rates charged." *Elvey v. Silver's Crust W. Indian Rest. & Grill, Inc*., No. 18-CV-126, 2019 WL 3937126, at *14 (E.D.N.Y. July 3, 2019).

### 1. Reasonable Hourly Rate

"The reasonable hourly rate is the rate a paying client would be willing to pay." *Robles*, 2021 WL 1034773, at *5 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008)). "This rate should be based on rates 'prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation.'" *Smith*, 2022 WL 939711, at *3 (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998)). "The 'community' is generally considered the district where the district court sits." *Elvey*, 2019 WL 3937126, at *14.

Santander has requested the following rates for the following attorneys: 1) Rudolph Meola ("Meola"), a partner, at a rate of $600 per hour; 2) Nichola Duston ("Duston"), a partner, at a rate of  $550.00 per hour; 3) Anthony D'Elia ("D'Elia"), a mid-level associate, at a rate of $375.00 per hour; and 4) Sarah Bouskila ("Bouskila"), a mid-level associate, at a rate of $375.00

8

per hour.  (*See* Santander's Mem. in Supp. of Mot. for Attorney's Fees ("Santander's Attorney's

Fees Mem.") 9 (Dkt. No. 96).)  Meola, who has practiced law for 30 years, has his own law firm

and has "extensive industry knowledge and experience handling issues relating to motor vehicle

impounds, including successful civil rights litigation under 42 U.S.C. 1983 or in violation or

other constitutionally-protected rights."  (*See* Decl. of Nicholas A. Duston ("Duston Decl.") ¶ 7

(Dkt. No. 90-1).)  Duston is a partner at Norris McLaughlin, P.A. ("Norris McLaughlin").  (*Id.* ¶

5.)  He has practiced law for 11 years and has "extensive commercial litigation experience in

[f]ederal [c]ourt, and [he] regularly represent[s] clients in civil rights litigation under 42 U.S.C.

1983 or in violation or other constitutionally-protected rights."  (*Id.*)  D'Elia and Bouskila both

have five years of experience practicing law at Norris McLaughlin.  (*Id.* ¶¶ 8–9.)

  "In the Southern District of New York, the customary rate for experienced litigators

ranges from about $400 to $600 per hour in civil rights . . . cases."  *Ekukpe v. Santiago*, No. 16-

CV-5412, 2020 WL 1529259, at *3 (S.D.N.Y. Mar. 31, 2020) (quotations and citation omitted);

*Indep. Project, Inc. v. Ventresca Bros. Constr. Co.*, 397 F. Supp. 3d 482, 496 (S.D.N.Y. 2019)

(same) (collecting cases); *see also Cocuzza v. Rockland Cty., New York*, No. 17-CV-8217, 2019

WL 6498915, at *4 (S.D.N.Y. Nov. 7, 2019) ("Precedent in the Southern District of New York

demonstrates that a reasonable hourly rate for a civil rights attorney can range from $250 to

$650.") (quotations and citation omitted), *report and recommendation adopted*, 2019 WL

6498092 (S.D.N.Y. Dec. 2, 2019); *Mahan v. Roc Nation, LLC*, No. 14-CV-5075, 2016 WL

4718018, at *2 (S.D.N.Y. Sept. 9, 2016) ("In recent years, New York district courts have

approved rates for experienced law firm partners in the range of $500 to $800 per hour."); *see id.*

(approving rates of $300 to $553 for associates); *DeCurtis v. Upward Bound Intern., Inc.*, No.

09-CV-5738, 2011 WL 4549412, at *8 (S.D.N.Y. Sept. 27, 2011) ("Consistent precedent in the

Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time." (quotation marks and alterations omitted) (collecting cases)).  The Court therefore finds that the rates of $600 per hour for Meola, $500 per hour for and Duston, and $375 for D'Elia and Bouskila are reasonable.

### 2. Reasonable Number of Hours

"The party seeking attorney's fees also bears the burden of establishing that the number of hours for which compensation is sought is reasonable." *Torcivia v. Suffolk Cnty.*, 437 F. Supp. 3d 239, 253 (E.D.N.Y. 2020) (quotations and citation omitted).  "A plaintiff is only to be compensated for 'hours reasonably expended on the litigation,' and not for hours 'that are excessive, redundant, or otherwise unnecessary.'" *Charles v. City of New York*, No. 13-CV-3547, 2014 WL 4384155, at *5 (S.D.N.Y. Sept. 4, 2014) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983)).  "The critical inquiry is whether at the time the work was performed, as reasonable attorney would have engaged in similar time expenditures." *Torcivia*, 437 F. Supp. 3d at 253 (quotation marks omitted).

The Santander attorneys submitted a detailed Billing Statement, reflecting that they spent a total of 222.1 hours on this case, amounting to a total of $115,672.50 in legal fees.  (*See* Duston Decl. Ex. A ("Billing Statement") (Dkt. No. 90-1).)  Having reviewed Santander's submissions, the Court finds that their billing entries are not "excessively vague, or block-billed in a way that makes them difficult to evaluate." *Robles*, 2021 WL 1034773, at *10; *see also Cocuzza*, 2019 WL 6498915, at *8 ("[C]ounsel, of course, is not required to record in great detail how each minute of [their] time was expended . . ., [but] counsel should [at least] identify the general subject matter of [their] time expenditures.").  To the contrary, the entries are sufficiently

detailed to "allow the court to conduct a meaningful review of the hours requested." *Restivo v. Hessemann*, 846 F.3d 547, 591 (2d Cir. 2017).

However, Santander appears to have spent a total of  59.9 hours—amounting to $32,799.50 in fees—on a motion for summary judgment that they never filed.  (*See* Billing Statement.)  "[C]ourts may disallow billing for hours spent working on submissions that were never filed." *Indep. Project*, 397 F. Supp. 3d at 497; *see also Mondragon v. Keff*, No. 15-CV-2529, 2019 WL 2551536, at *13 (S.D.N.Y. May 31, 2019) (subtracting hours spent researching and drafting motion that was never filed), *report and recommendation adopted,* 2019 WL 2544666 (S.D.N.Y. June 20, 2019); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 538 (S.D.N.Y. 2008) (noting that "counsel may be denied compensation for work done on motions that were never filed").  The Court will therefore deduct $32,799.50 from the total of $115,672.50 for a new total of $82,873.

Santander also requests an additional 20% enhancement of the lodestar due to the fact that Santander's attorneys were hired on a contingency basis.  (*See* Santander's Attorney's Fees Mem. 13–15.)  "[T]he fact that [Santander's attorneys] provided all of [their] services on a contingency fee basis counsels in favor of a larger fee award." *Ravina v. Columbia Univ.*, No. 16-CV-2137, 2020 WL 1080780, at *6 (S.D.N.Y. Mar. 6, 2020); *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 438–39 (S.D.N.Y. 2014) ("The fact that counsel here worked on contingency clearly entitles them to some premium for the risk incurred").  However, because the Court is mindful that the "civil rights statutes should not be construed to provide windfall recoveries for successful attorneys," *Hubbard v. Total Commc'ns, Inc.*, No. 05-CV-1514, 2010 WL 1981560, at *3 (D. Conn. May 18, 2010), the Court will instead apply a 15% enhancement of the lodestar, resulting in a total of $95,303.95 in attorney's fees. *See Restivo*, 846 F.3d at 589

(noting that § 1988 allows district courts to exercise their discretion when awarding reasonable attorney's fees to prevailing parties); *Hubbard*, 2010 WL 1981560, at *2 ("[T]he size of an award of attorney's fees lies largely within the discretion of the district court.").

### 3. Costs

Santander also requests $773.59 in costs, consisting of a $400 filing fee; $144.40, $80.40, and $134.20 in process serving fees; and a Federal Express charge of $14.59. (Duston Decl. ¶ 12.) "Courts generally award those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Smith*, 2022 WL 939711, at *11 (quotation marks omitted) (approving costs for filing fee, process service fees, and mail receipts); *see also Manswell v. Heavenly Miracle Acad. Servs*., No. 14-CV-7114, 2017 WL 9487194, at *23 (E.D.N.Y. Aug. 23, 2017) ("Costs for filing, process servers, and photocopying . . . are generally recoverable."). "The Court finds that these costs are of the type normally incurred and charged to clients." *Elvey*, 2019 WL 3937126, at *16 (approving costs for filing fee, postage, and process server fees). The Court therefore approves these costs as reasonable.

*      *      *

In sum, the Court awards a total of $95,303.95 in attorney's fees and $773.59 in costs to Santander, resulting in a total of $96,077.54 in attorney's fees and costs.

### B. Motions for Summary Judgment

Yonkers and APOW move for summary judgment against Mensah on all of her claims. (*See* Yonkers' MSJ Not. of Mot. (Dkt. No. 89); APOW's MSJ Not. of Mot. (Dkt. No. 103).) Mensah moves for summary judgment on all of her claims except for her claim under New York General Business Law ("GBL") § 349. (*See* Mensah's MSJ Not. of Mot. (Dkt. No. 91); *see also*

12

Mensah's Mem. of Law in Supp. of Mot. for Summ. J. ("Mensah's MSJ Mem.") (Dkt. No. 93).)
The Court will address each claim to the extent necessary to resolve the pending Motions.

    1. Legal Standard

    Summary judgment is appropriate where the movant shows that "there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.
R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir.
2014) (same). "In determining whether summary judgment is appropriate," a court must
"construe the facts in the light most favorable to the non-moving party and . . . resolve all
ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653
F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted); *see also Borough of Upper Saddle River
v. Rockland Cnty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014) (same). "It is the
movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800
Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Red Pocket, Inc. v. Interactive
Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same);
*Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 521 (S.D.N.Y. 2015) (same).

    "However, when the burden of proof at trial would fall on the nonmoving party, it
ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an
essential element of the nonmovant's claim," in which case "the nonmoving party must come
forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to
avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114,
123 (2d Cir. 2013) (alteration and quotation marks omitted). Further, "[t]o survive a [summary
judgment] motion . . . , [a nonmovant] need[s] to create more than a 'metaphysical' possibility
that his allegations were correct; he need[s] to 'come forward with specific facts showing that

there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012)

(emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings,"

*Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks

omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for

summary judgment is properly supported by documents or other evidentiary materials, the party

opposing summary judgment may not merely rest on the allegations or denials of his

pleading . . . .").

　　　　"On a motion for summary judgment, a fact is material if it might affect the outcome of

the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental

Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted).   At this stage, "[t]he role

of the court is not to resolve disputed issues of fact but to assess whether there are any factual

issues to be tried." *Brod*, 653 F.3d at 164 (quotation marks omitted).   Thus, a court's goal should

be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr

Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quotation marks omitted) (quoting *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323–24 (1986)).

　　　　"Where, as here, cross motions for summary judgment are filed, [courts] evaluate each

party's motion on its own merits, taking care in each instance to draw all reasonable inferences

against the party whose motion is under consideration." *Verizon Wireless of E. LP v. Town of

Wappinger*, No. 20-CV-8600, 2022 WL 282552, at *11 (S.D.N.Y. Jan. 31, 2022) (quoting Byrne

v. Rutledge, 623 F.3d 46, 53 (2d Cir. 2010)); *see also Dish Network Corp. v. Ace Am. Ins. Co.*,

No. 20-0268, 2021 WL 6058146, at *3 (2d Cir. Dec. 22, 2021) ("When both parties have moved

for summary judgment, 'the court must evaluate each party's motion on its own merits, taking

care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" (quoting *Coutard v. Mun. Credit Union*, 848 F.3d 102, 114 (2d Cir. 2017))); *Est. of Smith v. Cash Money Recs., Inc*., No. 14-CV-2703, 2018 WL 2224993, at *3 (S.D.N.Y. May 15, 2018) ("On dueling motions for summary judgment, the court must evaluate each party's motion on its merits and determine whether either is entitled to judgment as a matter of law" (citing *Coutard*, 848 F.3d at 114)).

### 2. Application to Facts

#### a. Fourth & Fourteenth Amendment

Yonkers argues that Mensah lacks standing to challenge the seizure of the Vehicle because, having defaulted on her loan payments to Santander, Mensah lost any property rights in the Vehicle. (*See generally* Yonkers' Mem. of Law in Supp. of Mot. for Summ. J. ("Yonkers' MSJ Mem.") (Dkt. No. 101).)  The Court disagrees.

"The Second Circuit has held that a plaintiff who has purchased a vehicle through an installment plan may retain a property right in the vehicle if [s]he has made substantial payments on the agreement." *Maxineau v. City of New York*, No. 11-CV-2657, 2013 WL 3093912, at *8 (E.D.N.Y. June 18, 2013) (citing *Alexandre v. Cortes*, 140 F.3d 406, 411 (2d Cir. 1998)).  Here, Mensah took out a $47,160 loan on the Vehicle, payable in $655 monthly installments. (*See* Mensah's Not. of Mot. Ex. 10 ("Finance Agreement") (Dkt. No. 91-10).)  By the date of Santander's repossession of the Vehicle, Mensah owed an outstanding balance of $29,951.55 on the loan. (*See* Decl. of Samuele Riva, Esq. ("Riva Decl.") Ex. 19 ("Repossession Notice") (Dkt. No. 94-19).)  "[T]he Court concludes on this record that [Mensah] had enough equity in the Nissan to have a property interest in the vehicle under the Fourteenth Amendment." *Maxineau*, 2013 WL 3093912, at *9 (finding that the plaintiff retained property interest in vehicle when he

15

made $3,600 in installment payments towards vehicle's $22,152 purchase price); *see also Barrett v. Harwood*, 189 F. 3d 297, 301 (2d Cir. 1999) (finding that plaintiffs who had made "substantial installment payments" loan retained a property interest in a truck); *Alexandre*, 140 F.3d at 407 & n.2–408, 411 (holding that a plaintiff who lacked title to a car nonetheless had a property interest in it, having paid approximately $2,100 of a $3,400 loan).

Having determined that Mensah did in fact have a property interest in the Vehicle, the Court will now consider whether Defendants violated Mensah's constitutional rights when they seized the Vehicle. Although the Second Circuit has not ruled directly on the issue, at least one lower court has addressed a similar issue. In *Harrell v. City of New York*, 138 F. Supp. 3d 479 (S.D.N.Y. 2015) the court granted summary judgment to the owners of unlicensed taxicabs in an analogous situation where the owners' vehicles were seized without a warrant to secure the payment of fines. *See*, *id*. at 494, *on reconsideration in part sub nom. Harrell v. Joshi*, No. 14-CV-7246, 2015 WL 9275683 (S.D.N.Y. Dec. 18, 2015). The court found that this practice violated the Fourth Amendment, concluding: "What [New York City] cannot do, consistent with the Fourth Amendment, is summarily seize property to deter future violations from an alleged violator and hold the property as leverage to ensure payment of a penalty . . . ." *Id.* at 492; *see also Rosemont Taxicab Co. v. Philadelphia Parking Auth.*, 327 F. Supp. 3d 803, 824 (E.D. Pa. 2018) ("Like the court in *Harrell*, we conclude that warrantless seizures of taxicabs violates the Fourth Amendment."); *Duffy v. City of Stanton*, 423 F. Supp. 2d 683, 686, 690 (E.D. Ky. 2006) (finding that the defendants seized the plaintiff's vehicles, which were in violation of a nuisance and zoning ordinance, "[b]y authorizing the towing [the] [p]laintiff's vehicles from his rental property").

16

The *Harrell* court similarly found that this practice violated the Due Process Clause of the Fourteenth Amendment, noting that "[the defendants have] cited no case, and the [c]ourt has found none, in which a federal court has ever upheld the warrantless seizure of private property in order to ensure payment of a fine, prior to any adjudication that the property owner committed any offense or that a fine is due." *Harrell*, 138 F. Supp. 3d at 494; *see also Krimstock v. Kelly*, 306 F.3d 40, 48 (2d Cir. 2002) (holding that "the [c]ity's continued retention of vehicles after their warrantless seizure by the police and prior to the ultimate resolution of [a] forfeiture action in court" was an "intermediate deprivation, lasting months or sometimes years without any prompt hearing before a neutral fact-finder" and "constitutionally infirm"); *Santander Consumer USA, Inc. v. Port Auth. of N.Y. & N.J.*, No. 20-CV-1997, 2022 WL 3099239, at *8 (E.D.N.Y. Aug. 4, 2022) ("The denial of possession of the [v]ehicles from [p]laintiffs until they pay fees—even as a temporary, nonfinal deprivation—is a deprivation pursuant to the Fourteenth Amendment."); *Rosemont Taxicab Co.*, 327 F. Supp. 3d at 826 ("[W]e find that the lack of pre-deprivation notice and hearing in this case denied [the] [p]laintiffs due process as a matter of law and post-deprivation process is insufficient to cure the violation."); *cf. Santander Consumer USA, Inc. v. Cnty. of Suffolk*, No. 20-CV-2656, 2021 WL 4480574, at *9 (E.D.N.Y. Sept. 30, 2021) (noting that "due process entitles lienholders to notice and an opportunity to be heard prior to forfeiture of a seized vehicle"). Additionally, in *Grimm v. City of Portland*, 971 F.3d 1060 (9th Cir. 2020), the Ninth Circuit held that "individualized pre-towing notice was required" where the plaintiff's car was towed after accumulating several tickets for parking illegally and displaying expired registration stickers. *Id.* at 1062, 1068. On the other side of the coin, the court in *Duffy* held that the defendants did not violate the plaintiff's due process rights because, "[b]y telling [the [p]laintiff in person that he was violating the ordinance and warning [the]

17

[p]laintiff that the [defendants were] planning to remove the vehicles, the [defendants] provided [the] [p]laintiff with the opportunity to comply with the law by relocating the offending vehicles or to protest their removal *before* he was deprived of his property." *Duffy*, 423 F. Supp. 2d at 688 (emphasis in original).

Here, with regard to the Fourth Amendment, the Parties do not dispute that the Vehicle was seized without a warrant. (*See* Mensah's 56.1 ¶ 10; Yonkers' Counter 56.1 ¶ 10.) Yonkers appears to argue that its warrantless seizure of the Vehicle was justified because it had a "statutory duty to protect the public from the operation of such expired and suspended vehicles from being driven on [Yonkers'] streets." (Mensah's 56.1 ¶ 11; Yonkers' Counter 56.1 ¶ 11.) *Harrell* addressed the public safety issue, finding that because "the intent when seizing the vehicles is to return them to their owner upon payment of the bond or penalty[,] . . . the seizures are ill-suited to achieve the goal of removing dangerous vehicles from the streets of New York— however laudable that goal." *Harrell*, 138 F. Supp. 3d at 491. Similarly, here, Yonkers provided Mensah with a release allowing her to obtain the Vehicle once she had paid the fines for her outstanding parking tickets. (*See* Decl. of Kristen Teague ("Teague Decl.") ¶ 11 (Dkt. No. 102).) Although the release required Mensah to certify that she would re-register the Vehicle before operating it on public streets, once she paid the outstanding tickets, "any restraint by [Yonkers] for [Mensah] to obtain her Vehicle from [APOW] was removed and [Mensah] had no more obligation to [Yonkers] that would prevent [her] from obtaining her Vehicle and having her Vehicle returned to her by [Yonkers]." (*Id.* ¶ 13.) Thus, according to Yonkers' policy, once the fines are paid, "[t]he vehicle is returned whether it is [registered] or not . . . ." *Harrell*, 138 F. Supp. 3d at 491. Thus, Yonkers' public safety argument fails, and the Court finds no other justification for Yonkers' warrantless seizure of the Vehicle.

Turning to the Fourteenth Amendment, Yonkers claims that it provided Mensh with notice prior to the Vehicle being towed, but states that Mensah did not receive said notice because she "changed addresses without advising the City and New York State Department of Motor Vehicles." (Yonkers' Counter 56.1 ¶ 62.) However, Yonkers does not provide the Court with any documentation of such a letter, and, in fact, an employee with the PVB admits in an affidavit that because "the PVB only learned of th[e] Vehicle's expired registration at approximately 1:00AM on January 24, 2020[,] there was no reasonable way for the PVB to notify [Mensah] to have her arrange for a tow of this Vehicle." (Decl. of Kristen Teague ("Teague Reply Decl.") ¶ 6 (Dkt. No. 120).)

Yonkers admits that it is "the standard practice of [Yonkers] to tow and impound [] [v]ehicle[s] based upon the foregoing circumstances." (*Id.* ¶ 11.) Yonkers justifies its actions by noting that Mensah was given a hearing before an ALJ three days after the Vehicle was towed. (Teague Decl. ¶ 7.) However, Defendants do not dispute that Mensah took it upon herself to go to the PVB and request the hearing. (*See id.*); *see also HVT, Inc. v. Port Auth. of New York & New Jersey*, No. 15-CV-5867, 2018 WL 3134414, at *11 (E.D.N.Y. Feb. 15, 2018), *report and recommendation adopted*, 2018 WL 1409821 (E.D.N.Y. Mar. 21, 2018) (noting that "the government must be responsible for arranging . . . the hearing"). Moreover, "[w]hen the deprivation occurs in the more structured environment of established [s]tate procedures, rather than random acts," the availability of post-deprivation procedures will not necessarily satisfy due process." *Santander*, 2022 WL 3099239, at *9 (quoting *Chase Grp. All. LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 152 n.3 (2d Cir. 2010) (alteration in original)); *see also Reid v. City of New York*, 212 F. App'x. 10, 11 (2d Cir. 2006) ("[A]n adequate post-deprivation remedy is a defense to a [s]ection 1983 due process claim only where the deprivation is random and

unauthorized." (quoting *Butler v. Castro*, 896 F.2d 698, 700 (2d Cir. 1990))).  Thus, because this was an authorized standard practice, the post-deprivation hearing before ALJ Ruggiero does not satisfy due process.

*     *     *

In sum, like the defendants in *Harrell*, *Rosemont,* and *Grimm,* Defendants seized the Vehicle without a warrant, notice, or pre-deprivation hearing.  And unlike in *Duffy*, Defendants did not warn Mensah in person or otherwise that they were going to tow the Vehicle.  Thus, in the absence of pre-towing notice, Defendants' warrantless seizure of the Vehicle violated the Fourth and Fourteenth Amendments, and Mensah is entitled to summary judgment on these claims.

### b. New York State Constitution

"[T]he proscription against unlawful searches and seizures [under the New York Constitution] conforms with that found in the [Fourth] Amendment." *Domeneck v. City of New York*, No. 18-CV-7419, 2019 WL 5727409, at *9 (S.D.N.Y. Nov. 5, 2019) (alterations in original) (quoting *People v. Johnson*, 66 N.Y.2d 398, 406 (N.Y. 1985)).  Additionally "[t]he New York State [C]onstitution's guarantees of . . . due process are virtually coextensive with those of the federal Constitution."  *Febres v. City of New York*, 238 F.R.D. 377, 392 (S.D.N.Y. 2006).  Mensah argues that "[b]y virtue of having violated the Fourth and Fourteenth Amendments, Defendants are equally liable for violation of those corresponding provisions under the New York State Constitution."  (Mensah's MSJ Mem. 31.)

However, "[b]ecause New York 'has no enabling statute' like [§] 1983 that 'permit[s] damage actions for the deprivation of [state] constitutional rights,' [Mensah] seeks to proceed directly under "the [New York] Constitution itself.'"  *Talarico v. Port Auth. of N.Y. & N.J.*, 367

20

F. Supp. 3d 161, 171 (S.D.N.Y. 2019) (first, second and fifth alterations added) (quoting *Brown v. State*, 89 N.Y.2d 172, 186 (1996)). "In doing so, she necessarily relies on the 'narrow remedy' the New York State Constitution offers in certain contexts where 'Congress and the [U.S.] Supreme Court' have failed to 'provide appropriate protection against official misconduct at the State level.'" *Id.* (quoting *Brown*, 89 N.Y.2d at 186). "District courts in this circuit have consistently held that there is no private right of action under the New York State Constitution where, as here, remedies are available under § 1983." *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 520 (S.D.N.Y. 2013) (quotation marks omitted) (collecting cases). Accordingly, Yonkers and APOW are entitled to summary judgment on Mensah's claims under the New York State Constitution. *See Barzilay v. City of New York*, No. 20-CV-4452, 2022 WL 2657169, at *44 (S.D.N.Y. July 8, 2022) (finding that the defendants were entitled to summary judgment on state constitutional claims where "the theory of liability brought for those claims [was] duplicative of the theory of liability under the federal constitution"); *Maldonado v. City of New York*, No. 11-CV-3514, 2014 WL 787814, at *12 (S.D.N.Y. Feb. 26, 2014) (finding that "[s]ummary judgment in favor of [the] [d]efendants is [] warranted" where "state constitutional claims reiterate his § 1983 claims verbatim").

### c. Conversion[3]

"New York defines conversion as the 'unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property.'" *Marvel Worldwide, Inc. v. Kirby*, 756 F. Supp. 2d 461, 469 (S.D.N.Y. 2010) (quoting *Meese v. Miller*, 436 N.Y.S.2d 496, 500 (N.Y. App.

---

[3] Mensah brought her claim for conversion against the APOW Defendants but not against Yonkers. (*See* Mensah's Compl. ¶¶ 92–97 (Dkt. No. 62).)

Div. 1981)). "To prevail on such a claim, a plaintiff must demonstrate (1) a possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Azurdia v. City of New York*, No. 18-CV-04189, 2019 WL 1406647, at *9 (E.D.N.Y. Mar. 28, 2019) (quotation marks omitted). "In addition to being actionable under § 1983 as an unconstitutional seizure of property [under the Fourth Amendment,] . . . the taking of the [plaintiff's] [property] also sounds in the New York common law tort of conversion . . . ." *Rothman v. City of New York*, No. 19-CV-225, 2019 WL 3571051, at *14 (S.D.N.Y. Aug. 5, 2019); *cf. Azurdia*, 2019 WL 1406647, at *9 (concluding in the reverse that because the court did not find a Fourth Amendment violation, it could not find that the plaintiff had stated a claim for conversion where the claims were based on "the same facts").

Here, the Court already has found that Mensah has a property interest in the Vehicle and that the Defendants unconstitutionally seized the Vehicle in violation of the Fourth Amendment when they towed and impounded it. *See supra* Part II.B.2.a. The Court also has found that Defendants did not provide Mensah with the required notice prior to towing the Vehicle. *See id.* In *Speno v. Dobbins Auto Parts, Inc.*, No. SC6378, 2003 WL 23138791 (City Ct. of Watertown N.Y. 2003), the court found that the defendant towing company converted the plaintiff's vehicle when it towed the plaintiff's vehicle—which was issued a ticket for an expired registration— without sending the required notice and refused to release the vehicle to the plaintiff until he paid the towing and storage fees. *See id.* at *1, *3. Similarly, here, APOW refused to release the Vehicle to Mensah until after she had paid the balance of the unpaid parking tickets on March 20, 2020. On that date, "any restraint by [Yonkers] . . . was removed and [Mensah] had no more obligation to [Yonkers] that would prevent [her] from obtaining her Vehicle and having her Vehicle returned to her by [APOW]." (Teague Decl. ¶ 13.) However, APOW retained custody

22

over the Vehicle because Mensah had not yet paid for storage and towing fees that she allegedly owed to APOW.  (*See id.* ¶ 16.)  Thus, just like the defendant in *Speno*, APOW "was attempting to hold [Mensah's] car as hostage to collect a lien [it] was not entitled to and thus at that moment the conversion occurred."  *Speno*, 2003 WL 23138791, at *3; *cf. HVT*, 2018 WL 3134414, at *15 (citing *Speno* and finding that "[t]he charges for the storage of the [s]ubject [v]ehicle must be voided as [the p]laintiff did not receive timely notice of the towing").  Thus, the Court finds that APOW improperly converted Mensah's property when, without providing any prior notice, it refused to release the Vehicle to Mensah after she had paid the balance of her parking tickets, but while the balance of the storage and towing fees remained.

In any event, APOW "completely fail[s] to address this claim" in its Opposition and Reply papers, and thus any opposition to Plaintiff's Motion on this claim is deemed abandoned. *Columna v. City of New York*, No. 19-CV-3801, 2022 WL 767103, at *10 (S.D.N.Y. Mar. 14, 2022); *see also Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a[n] [argument] abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way"). Mensah is therefore entitled to summary judgment on this claim.

### d. New York General Business Law § 349[4]

"Section 349 [of the GBL] prohibits deceptive acts or practices in the conduct of any business, trade[,] or commerce . . . .'" *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021

---

[4] Mensah moved for Summary Judgment on all Counts in her Complaint except for Count V, which is Mensah's claim against the APOW Defendants under the GBL.  (*Compare* Mensah's Compl. *with* Mensah's MSJ Mem.)  The APOW Defendants moved for summary judgment against Mensah on all Counts, including Mensah's GBL claim.  (*See* APOW's Not. of Mot. (Dkt. No. 103).)  Like her claim for conversion, Mensah's GBL claim is against the APOW Defendants but not against Yonkers. (*See* Mensah's Compl. ¶¶ 98–104.)

WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021) (quotation marks omitted).  "The New York Court of Appeals has held that in order to state a prima facie case under General Business Law § 349, a plaintiff must charge conduct of the defendant that is *directed at consumers*."  *Burgos v. Airday*, No. 00-CV-4288, 2001 WL 995342, at *10 (S.D.N.Y. Aug. 29, 2001) (emphasis added).  In *Burgos*, the defendant Marshal seized the plaintiff's car pursuant to a judgment against her for parking tickets.  *Id.* at *1.  As a condition for retrieving her car, the plaintiff was required to pay a set of fees in addition to her outstanding parking tickets.  *Id.* at *10.  The court dismissed the plaintiff's GBL claims because they were not consumer oriented, and therefore did "not fall within the purview of § 349."  *Id.*   Here, the Court similarly finds that the interaction between Plaintiff and APOW was a "single shot transaction" and was not directed at consumers in general.  *See id.*; *see also Escabi v. Twins Contracting, LLC*, 167 N.Y.S.3d 771, at *17 (N.Y. Sup. Ct. 2022) (dismissing GBL § 349 claim where "the only parties truly affected by the alleged misrepresentations in this case are the plaintiff and the defendants").

Moreover, Mensah "never explicitly defend[ed] the [GBL] claims[] in [her] briefs.  Accordingly, the Court concludes that [Mensah] ha[s] abandoned th[is] claim[]."  *Morgan v. Cnty. of Nassau*, No. 13-CV-06524, 2017 WL 664027, at *18 (E.D.N.Y. Feb. 17, 2017).  APOW is therefore entitled to summary judgment on Mensah's GBL claim.

### e. Relief

Having found that Mensah is entitled to summary judgment on all of the claims on which she moved to summary judgment, the Court will now consider the relief that she is due.  "As to damages related to the value of the [] Vehicle, the record is incomplete as to both Parties . . . ."  *HVT*, 2018 WL 3134414, at *15.  For example, Mensah requests the fair market value of the Vehicle from January 24, 2020, until October 23, 2020.  (Mensah's MSJ Mem. 34.)  She also

requests to be "compensated for all damages that were the natural consequence of Defendants' deprivation, including, but not limited to, public transportation costs for her and her children, and time and money spent in attempting to repossess the [V]ehicle, in an amount to be determined at a damages hearing." (*Id*.) Mensah further requests punitive damages and attorney's fees. (*See id.* at 34–35.) Mensah does not provide specific calculations or documentation to support her requests. (*See id.*)

The Court therefore denies Mensah "summary judgment as to damages with leave to move for monetary damages by separate motion." *HVT*, 2018 WL 3134414, at *15; *see also Am. Honda Fin. Corp. v. Twp. of Aston*, 546 F. Supp. 3d 371, 384 (E.D. Pa. 2021) ("Exactly what . . . economic harm [the plaintiff] sustained between August 2018 and January 2021 [that] is attributable to [the defendant's] wrongful actions is unclear. [The Plaintiff] may renew its request for compensatory damages so that the issue may be properly considered."). "The [damages motion] should include information for the fees imposed for the storage of the Vehicle[] and Defendant[s] will have an opportunity to respond to the motion. The Court also directs the parties to confer to determine if they can agree as to compensatory damages." *Santander*, 2022 WL 3099239, at *13.

Additionally, as discussed above, "[p]ursuant to [42 U.S.C. §] 1988, a court may award 'the prevailing party' in a [§] 1983 lawsuit reasonable attorneys' fees and costs. *HVT*, 2018 WL 3134414, at *16 (citing 42 U.S.C. § 1988). "Having prevailed on its summary judgment motion almost in its entirety, [Mensah] may move for an award of attorneys' fees pursuant to Fed. R. Civ. 54(d)(2)." *Id*.

25

## III. Conclusion

For the reasons discussed above, Santander's Motion for Attorney's fees is granted with modifications, with the Court awarding a total of $96,077.54 in attorney's fees and costs to Santander.  Yonkers' Motion for Summary Judgment is denied, Mensah's Motion for Summary Judgment is granted, and APOW's Motion for Summary Judgment is granted in part and denied in part.  Specifically, APOW's Motion for Summary Judgment is denied with respect to every claim except for Mensah's GBL claim.  The Clerk of Court is respectfully directed to terminate the pending Motions.  (Dkt. Nos. 89, 95, 103, 106.)

SO ORDERED.

DATED:       September 12, 2022
             White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE